Good morning, your honors. May it please the court. My name is Robin Conrad, and I, along with my co-counsel Dale Beige, represent the appellant Greg Dickens. This case involves two defendants with opposite degrees of culpability. Travis Amaral, on the one hand, who admitted that he shot and killed two people at a rest stop. And Greg Dickens, on the other hand, who was in his truck across the interstate when Amaral shot the victims. In exchange for a life sentence, Amaral testified against Mr. Dickens. A crucial piece of Amaral's testimony was called into question by the state at trial and then disavowed by the state on direct appeal. Today, I plan to discuss the following three issues in turn. The Edmund Tyson issue, the F6 aggravating factor issue, and the bailiff misconduct issue. When considering the first two issues, which both relate to Mr. Dickens' death sentences, this court must look at the problems with the state court factual determination supporting the death sentences. The state court fact-finding process was unreasonable in two critical ways. First, the Arizona Supreme Court determined that while Amaral was robbing the victims, Mr. Dickens commanded him via walkie-talkie to leave no witnesses. This finding is unreasonable on the record. At trial, the prosecutor told the jury during closing, quote, maybe Amaral didn't have the walkie-talkie with him. Maybe this is one of the times he's lying, end quote. The prosecutor also told the jury that if they believed Mr. Dickens... I guess I'm having a tough trouble. If we're just going to go about walkie-talkies, that that ought to be what we're really concentrating on because I'm not sure that the Arizona Supreme Court even gave the walkie-talkie stuff any credibility at all. As I read the Arizona Supreme Court, there was nothing in there about walkie-talkies. There was nothing in there about the walkie-talkie evidence. There was nothing in there about the testimony about walkie-talkies. The Arizona Supreme Court talked about the robberies were premeditated, planned, and agreed upon. He provided the murder weapon. He knew that Amaral had the weapons with him. He drove him to the scene. He waited for him to commit the robberies. He picked him up, and he witnessed the destruction of the evidence and failed to do anything about it. Nothing about walkie-talkies or even that he commanded him to do something about it. So if that's your total argument, then I think we're missing the point. Let's get to what it really is. He was aware that Amaral had a violent and explosive temper. He failed to render aid knowing that one victim might not be dead. He helped him flee. He didn't report the murders to authorities. All of those are facts that have nothing to do with walkie-talkies. And, Your Honor, I believe you're quoting from the Inman Tyson portion of the Arizona Supreme Court's opinion. And you are correct that that portion does not cite the walkie-talkies. However, the Arizona Supreme Court opinion in the initial facts as it lays out the case talks about the walkie-talkies and quotes Amaral's testimony. But really, isn't your big issue if we're talking about Inmans and we're talking about Tyson, whether it agrees with those cases, Inman, and how Tyson has modified it? And so I have to look at what they thought was important, and I've laid it out. And walkie-talkies didn't have a thing to do with it. Yes, Your Honor. And I think the important thing that this court needs to look at is look at the fact-finding process in its entirety. The walkie-talkies are one part of the fact-finding process in the Arizona Supreme Court. The other defect in the fact-finding process was that the state court based its findings in large part on Amaral's testimony without explanation why it chose to believe certain aspects of his story despite it having uncontested evidence from multiple experts that Amaral was unable to be truthful. This court has held in Taylor v. Maddox that when a state court fails to consider key aspects of the record, that is a defect that infects the entire fact-finding process. Well, I appreciate your going there, but if I go with just what your client suggested, I guess I'm having a tough time knowing how to get around these two cases. Inman and Tyson? Yeah. Well, Your Honor, let's talk about particularly Inman and Tyson. If we look at just the uncontested facts here, taking out, as you mentioned, saying what Mr. Dickens had agreed to or that are uncontested. Mr. Dickens and Amaral stopped at a rest stop outside of Yuma on Interstate 8. Another car pulled into the rest stop on the opposite side of the interstate. Amaral walked across the interstate carrying a gun. Amaral shot Laura and Brian Bernstein each once in the head and stole Brian's wallet. And then Mr. Dickens drove his truck out of the rest stop, crossed the interstate, and then picked up Amaral. Those are the uncontested facts. Well, there is uncontested as well that he knew Amaral was going to rob the victims, that he knew Amaral had a long history of carrying guns, that he talked about what happened at Oak Grove Institute, that they'd staked out the rest area. I mean, all of those are also in the facts, even as your client suggests. Mr. Dickens did not ever say that he planned this robbery with Amaral. That is not his statement and his testimony. So then if I read in the record from 1149 to 1160, then I can't find that he even had any attempt to plan this? No, Your Honor. Okay, I've read it pretty carefully. I'm having a tough time with that, but I'll take your argument. Even if we assumed that he was involved in planning this robbery, Mr. Dickens did not exhibit a reckless indifference to human life. The Arizona Supreme Court said that he failed to render aid to one of the victims, but there is uncontested evidence that both from Amaral, who said that Mr. Dickens, if we believe Amaral, that Mr. Dickens went through the rest stop to make sure nobody was moving and everything was taken care of. That's what Amaral testified to. That could be read two ways. To make sure nobody was moving would be consistent with leaving no witnesses. Which would mean nobody was alive. And the court found, the Arizona Supreme Court found, that he failed to render aid. Unlike the Tyson case, the participants there were actively involved. They brought a cooler of weapons to a prison to break out two convicted murderers from prison. They flagged down the car of the victims. One brother did that. The other brother hid, lying in wait, while the victims were flagged down. Both brothers held the victims captive with guns and both watched as the victims were gunned down. We don't have those facts here. Why don't we? Because Mr. Dickens did not assist in the killings. Well, hold on just a minute, just a minute. If we believe the evidence that's in the record, it's easy to suggest that he gave the gun to Amaral. Go ahead. What was the finding on whether he gave the gun to Amaral? Well, the Arizona Supreme Court in, excuse me for one moment. Well, maybe I can help you. It found that he either gave the gun to Amaral or he knew that Amaral had the gun, right? That's right. Correct. That's what the trial judge found. In the Arizona Supreme Court opinion at ER 232, they recite the fact saying defendant gave Amaral a loaded revolver and nodded his head and Amaral walked across the freeway. However, again, if you believe Amaral's testimony, Amaral testified, quote, I grabbed the weapon. And he said that several times in his testimony that he grabbed the gun, not that Mr. Dickens handed him the gun. But either way, the court found that he either knew that Amaral had the gun or that he gave him the gun. And I don't think that that's enough for reckless indifference to human life. Well, maybe we ought to get clear. But knowing that someone's going to commit an armed robbery, there's no question he knew that he was going to commit an armed robbery. Is that enough for a death sentence? No, Your Honor. That you know there's going to be an armed robbery and you're participating in an armed robbery by being across the street and waiting to give the armed robber a ride. And that you planned an armed robbery and participated in an armed robbery. Is that enough to make you recklessly indifferent? Judge Reinhart, I do not think so. And I don't think that the United States Supreme Court's precedent would say so. Let me ask you this. If you're answering his question, we're really talking about grave risk of death. What Supreme Court precedent do I have to suggest that armed robbery is not known to carry a grave risk of death? What precedent? Give me the case. That armed robbery is not known? Is not known to carry a grave risk of death. I don't have a case that says it's not known to carry a grave risk of death. Well, then, if we don't have a case, can we say it's an unreasonable application of Supreme Court precedent? Well, Your Honor, this is an unreasonable application because we have to look at it in context of the fact-finding process that was defective. The Arizona Supreme Court gave no reason, neither did the trial judge, for ignoring... Isn't Tyson the case you're relying on? When it says participation in violent felonies like armed robberies can frequently anticipate that legal force might be used. Edmund himself may well have so anticipated. The possibility of bloodshed is inherent in the commission of any violent felony, and this possibility is generally foreseeable and foreseen. Therefore, if foreseeability was the test for death penalty eligibility, then the test would be reduced to little more than a restatement of the felony murder rule itself. Isn't that what you're relying on? Yes, Your Honor, and... Well, then, the case in answer to Judge Smith's question is you're relying on Tyson. Yes, I suppose I am. Thank you, Judge Reinhart. And if we just keep in mind that, as he mentioned, there has to be an individualized consideration here for a defendant to be death eligible. It's not just enough that a murder has happened, and the Supreme Court precedent makes that clear. So, in this situation, the fact-finding process was defective. The walkie-talkies you mentioned aren't mentioned with Edmund Tyson, but they are in the F6 aggravating circumstance of cruelty. Counsel, in Tyson, the Supreme Court clarified that Edmund stood for the proposition that since the defendant's own participation in the felony murder was so attenuated, and since there was no proof that the defendant had any culpable mental state, the death penalty was excessive. Is that true in this case? Yes, Your Honor. Mr. Dickens did not have the culpability necessary to be death eligible. He didn't have a culpable mental state? Not to be death eligible. Well, the question, I think, is what kind of culpable mental state do you need? There's no question he was culpable of participating in what was going to be an armed robbery. Right. The question is, is he culpable of planning the murder, or the kind of culpability that you might need for knowing that a murder was going to take place? And that's the question of what does Tyson say? Tyson says the fact that you participate in an armed robbery isn't enough to make you have that kind of culpability. What we ought to discuss is, even if it's foreseeable, when you participate in an armed robbery, that there may be violence. I think they also give you the percentage figures, which is less than a half a percent lead to death. But the question Judge Rollins is asking you is, is there the kind of culpability that goes beyond that, that I guess suggests that you are planning a murder or that you are somehow encouraging the murder as opposed to the robbery? And Mr. Dickens did not have that culpability. He did not encourage a murder. He did not plan the murder. Contrary to what the Arizona Supreme Court's opinion stated when discussing the F6 aggravator, the court there found that Dickens planned the murders. He did not plan the murders. The jury acquitted him of premeditated murder and conspiracy to commit premeditated murder. So that is an unreasonable factual finding on the record. Well, let me say, speaking for myself and maybe nobody else, I think your more difficult problem is the reckless indifference. And Judge Smith has mentioned at least one aspect that would lead to reckless indifference or could lead to reckless indifference, and that is whether it's reckless indifference as a matter of law and whether the facts support reckless indifference. When he drove across the street, drove to where he met the actual killer, whether he then observed and left somebody, observed somebody that was living and left him to die without coming to his aid, whether that's reckless indifference and did that occur? Well, as I mentioned, Judge Reinhart, the record doesn't seem to support the finding that he failed to render aid. Judge Rawlinson said maybe that meant something else, but it's clear if Amaral testified that Mr. Dickens went through the rest stop to make sure that nobody was moving and everything was taken care of, that implies that he would have no reason to believe that the individuals were living. The other factor that the judge found... Seeing that somebody was moving but not likely to survive and then still left. So, I mean, I think we have to give deference to the factual findings of the Arizona Supreme Court, and it seems to me that you're kind of nitpicking the fact findings of the court rather than giving them the deference that we're required to do under EPA. Well, Judge Rawlinson, that was my first point in discussing the death sentences, is that under 2254 D2, the fact-finding process here was unreasonable and deference is not owed to these findings. Well, the Supreme Court has recently instructed us that we have to determine that there is no rational explanation for the factual findings before we can discard them. Are you saying there is no rational explanation for the facts that were found? Well, what I'm saying is that looking at the process under Taylor v. Maddox, this circuit has made clear that there can be a defect in the process when a court ignores uncontested evidence and gives no explanation for that uncontested evidence, which is what the state court did here, where there was uncontested evidence that Amaral was a chronic liar, unable to tell the truth, and the courts did not deal with that. But the jury obviously believed his testimony because they convicted Mr. Dickens largely on the basis of his testimony. Well, Your Honor, as I've submitted, there is some question about the jury, and that involves the third issue I was planning to discuss, the bailiff issue. Yeah, but don't leave this issue of reckless indifference. Okay. I really think it would be good for you to explain Judge Reinhart's question. I feel like he gave you a pretty good in-world into where you're going, and when you're talking about highly culpable, reckless indifference is exactly where we need to go, and he's suggesting the many factors that are there in the record, and he's saying, what do we do about that? Well, again, if you take the record without looking at the fact that there was a problem with the fact-finding process Well, that's one of your arguments. I mean, what are the facts in the record that say Amaral's testimony, does that support a finding that he went to look to see and found somebody alive? I'm sorry, could you repeat that? Does Amaral's testimony support a finding that Dickens drove through to look for somebody and found somebody alive? No. Amaral's testimony at ER 1230 says that Mr. Dickens told him, quote, he went through the rest stop to make sure nobody was moving and everything was taken care of. But moving and alive are two different things, right? Yes, Your Honor, they are two different things. Mr. Dickens testified that Amaral told him that Amaral left no witnesses, that no one was alive. So you're suggesting the record does not meet the Arizona court finding that your client failed to render aid knowing one victim may not be dead. You're saying the record does not evidence that? Correct. What is the rule in general if you're a getaway driver and someone goes into a store and shoots a couple of people? If you don't go check to see that he succeeded in killing everybody, does that make you recklessly indifferent? I would say no, Your Honor, it certainly doesn't. And Inman set out the rule first, which was followed up by Tyson. But the facts of Inman made clear that the Supreme Court has said it's not just enough to be the driver of a getaway car, that you have to show this unrealistic – But do you have an obligation to – I mean, is it because he – well, I guess I should ask your opposing counsel this – what it is about leaving a scene of a murder, knowing that someone may be alive, that makes you recklessly indifferent? I guess I should ask these questions of your opponent. Well, and Judge Reinhart – But if you have an answer to it, that's fine. Well, in Tyson, the petitioners, the two sons who were at the crime scene, they watched their father and their father's friend gun down the victims. And I think the court was pointing out that they failed to render aid there, under those circumstances, where there could be a possibility that they could have prevented something. That is not what we have here. Well, Tyson they sent back, didn't they, to the liberal court for finding them? Yes, and the Tyson brothers were sentenced to life, ultimately. So we don't know, ultimately, what was reckless indifference, because they didn't find reckless indifference in that case. Correct. And the facts were pretty bad in Tyson. Right. The Tyson brothers were very involved in the kidnapping robbery that took place there. They were armed themselves. The level of culpability and level of involvement of the Tyson brothers far exceeds Mr. Dickens, who was sitting across the aisle. But that doesn't mean that it precludes a finding of culpability. That's the difficulty I'm having with your argument. It doesn't have to rise to the exact level of Tyson. And I understand that. That's the problem I'm having with the high standard under AEPA and the fact that the jury accepted the testimony of the co-participant. It creates a really high obstacle for you to overcome. Well, the jury found Mr. Dickens guilty of felony murder. Which means they found he participated in the robbery that led to the murder. But that in and of itself, again, felony murder alone does not rise to the level under the Eighth Amendment of allowing somebody to be sentenced to death for their actions or participation in a felony that turns into somebody ends up dead. That's right. But if the Arizona Supreme Court has made a finding that there was a level of culpability that justified the imposition of the death penalty, that's a really high burden to establish that that was an unreasonable determination of the facts when you have the circumstance that the jury credited the testimony of the co-participant. That's what I'm saying. How do you say that that's an unreasonable determination of the facts? Well, Judge Rawlinson, I think the jury verdict is separate from what needs to be found for a death sentence. At this time in Arizona, it wasn't the jury that was sentencing the defendant. I understand that. But we have the Arizona Supreme Court who looked at the jury findings and extrapolated to that that there was a level of culpability. Looked to the testimony at the trial and said there was a level of culpability that warranted imposition of the death penalty. And I'm wondering how you can overcome the deference that's owed to that. Well, and I've said this before, but it's because there was unreasonableness in the fact-finding process. So we have all this uncontested evidence that Amaral was unable to be truthful, that he was a chronic liar, and the courts gave no reason. Well, the jury believed him as to certain things and not as to others. And we know, for instance, that the state says, don't believe him as to what he said about the walkie-talkies. We know that the jury did believe him as to certain other things. The question is, if you have a chronic liar and the jury believes, you know, even liars tell the truth sometimes. And, you know, what do we know about what the jury thought about whether he drove through the parking lot or not? Amaral's testimony, as I recall it, is that he didn't know himself whether he drove through the parking lot, although that's rather odd. But he says, Greg had come back, come around from the other side, cutting across the median, driving through. I do believe. I can't say that he did. I do believe from a conversation we had later on. He did say he was going through the rest stop to make sure nobody was moving or everything was taken care of. Now, on cross, he said, the only thing I can remember is he came and picked me up. I don't know if he was leaving the interstate as far as leaving the rest stop or coming into the lane going out the rest stop. Even after prompting as to whether he saw Dickens drive through the rest stop, Amaral said he did not remember Dickens driving through the rest stop. So what you have as a factual basis is that Amaral said that Dickens said to him that he drove through the rest stop to make sure nobody was moving. Now, is that a sufficient factual basis or is it an unreasonable determination of the facts? And Dickens, of course, denied he drove through. But that seems to me to be the question. Is that statement that Amaral made that Dickens said to him later that he drove through the rest stop to make sure nobody was moving, isn't that basically the evidence it is? Of reckless indifference to human life? Well, that he drove through and saw somebody who either was or wasn't moving. Yes, Your Honor. And why isn't that enough? That is not enough to say that that rises to the level of culpability of reckless indifference to human life for purposes of being sentenced to death. Well, I think you're really, I mean, the evidence that's been presented to you now is one part of the evidence the Supreme Court relies upon in coming to its decision. And you're saying that that is not enough in this record to substantiate that finding by the Arizona Supreme Court? Yes, Your Honor. There's inconsistencies between that.  Do you understand the question to be whether it's enough to remove that factor or are you saying that because of that they can't find reckless indifference for any reason? The second thing that you said. So, in other words, that fact that you promote... That's the whole shebang, that one fact. That one fact is not the whole shebang, but that fact is unreasonable. So, I see I'm almost out of time and I wanted to say... But there are other factors that I think Ed Smith would suggest to you supported the finding of reckless indifference. I don't think Ed Smith would suggest that that's the only factor that supports reckless indifference. Well, all I was trying to suggest is I found the Arizona Supreme Court found reckless indifference because of several different things. One, the defendant had considerable experience with the judicial system through his other felony convictions. Two, he was aware that Amaral had a violent and explosive temper. Three, he failed to render aid knowing one victim may not be dead. They also talk about the fact Amaral was a high-risk patient. Amaral had a violent and explosive temper. He'd beaten up a nurse. He had a long history of carrying guns. He even pointed a gun at your client just prior, attempting to intimidate him. In fact, if you read the record, maybe even going to shoot him. And he bragged about being involved in other murders, and yet he did nothing. May I answer your question? Sure. The court did find that Mr. Dickens had considerable experience with legal authorities from his prior convictions. However, that is not enough to support a finding for death eligibility because Mr. Dickens had previously been convicted of lewd and lascivious acts with minors is not enough to say he has the reckless indifference to human life in the situation of this case. But that's the very thing that I was trying to get you to focus on in my last question when you were responding to Judge Ryan. And what I was saying. And that is the very thing he was saying. One thing maybe, one thing maybe, but we've got a whole list here. We have three things. And the third thing, if I may just finish up on this, and I'm sorry for being out of time. Well, let's try to do it quickly. Judge Smith read you some factors that the court thought led to reckless indifference. Unfortunately, we don't have any time, but this is an important question in this case, and it's an important case, so I think we can give you a little more time and we'll give your opponent the same amount. Because Judge Smith's question really goes to the heart of this case. The other factors he read to you were the fact that he has a previous record, one count of forgery, two counts of lewd and lascivious conduct. And I think you've answered from your perspective that that doesn't mean that you don't care about human life. The second thing he said is that Dickens was aware that Amaral had a violent and explosive temper. You should address that. The other thing was that he, you know, whatever he knew, and I'm not sure about why he was admitted to Oak Grove, and that he carried a gun in, was this Arizona? He lived in California. In California, he carried a gun. Then there was something about an assault on a nurse and that Amaral had bragged about other murders, which Dickens said he didn't believe and probably is not true. I think, does that cover the list, Judge Smith? Very well. Except the pointing the gun right at Amaral. Except pointing the gun right at him prior to going across the road. Okay, and I think I've already touched on his prior convictions. Yes, you have touched on his prior convictions. But regarding what he knew about Amaral and Amaral's character and that he had an explosive temper, Mr. Dickens did testify and said he knew that Amaral had a violent and explosive temper. However, that in and of itself, knowing somebody took the phone... I wish you wouldn't keep saying in and of itself. Don't keep saying in and of itself. What you really mean to say is the fact that he knew he had a violent and explosive temper didn't mean that he knew he was going to kill people. Correct. That's your answer. Okay, next. You can't take each one. That's the problem with your approach, is you're taking each one of the factors that the Arizona Supreme Court looked at and dissecting each one and saying, well, that's not enough. The second one's not enough. The third one's not enough. But the Arizona Supreme Court looked at all of those. So why isn't it sufficient that all of those factors taken together was enough to exhibit reckless indifference? Well, it goes back to the point that the Arizona Supreme Court and the trial court in sentencing him had no explanation for what facts they picked for what situation. So the fact that Amaral had an explosive temper, that Mr. Dickens testified that, they believed Mr. Dickens on that aspect but not on the other aspects. So what case says that the state court, when it engages in fact-finding, has to explain why it found a witness credible on one point and not credible on the other? What case says that? Taylor v. Maddox, this court. Because we can't rely on our court decisions when we're on habeas. What Supreme Court decision says that a state court has to explain why it made certain credibility findings? There hasn't been a Supreme Court decision that I'm aware of, but I would suggest that this court can apply its own precedent in determining how to apply the AEDPA factors. Was Taylor v. Maddox interpreting what the Supreme Court said? Or was it... In part, yes. There's an explanation of the statutory construction. The court goes through a detailed analysis of D2 and E1 of 2254. And also, in that case, there was an issue where the state court ignored entirely evidence of a witness that contradicted the findings that the state court ultimately decided. And the court said that a judge must acknowledge significant portions of the record, particularly where they are inconsistent with the judge's findings, that this is just a problem in its entirety of the fact-finding process. But the United States Supreme Court has told us that credibility determinations are for the trier of fact and not for us to make on appeal. And I understand that, Your Honor. I'm not disagreeing with that. It's this situation where there's uncontested evidence regarding the truthfulness of this individual, and a court is relying for... parts of his testimony to find reckless indifference to human life and find Mr. Dickens was culpable enough to be sentenced to death. Yeah, but if that were the standard, then every time there's divergent testimony, there would be a basis for relief in habeas. I don't think every time that there's divergent testimony, but there's certain cases, and in particular this one, where it rises to the level of the federal court looking to see why did the state court do what it did, and why is this unreasonable. All right, thank you, counsel. Thank you. Counsel. May it please the court. My name is John Todd. I'm an assistant attorney general. I represent the respondents in this matter. In our opinion, Judge Wallison hit the nail on the head as at what view this court should be taking of the proceedings below. As she indicated, that federal habeas relief is precluded, is precluded so long as fair-minded jurists could disagree as to whether the state decisions were correct. As the Supreme Court recently reminded this court in Harrington v. Richter, under our federal system, our rule of law is great deference to the state court's decisions. It can even be wrong. But we don't abdicate our responsibility under the Constitution entirely, do we? Absolutely not. I mean, this court sits to be as a check to be sure that the state courts are properly applying constitutional law, as the United States Supreme Court has indicated the law is. So that is certainly a correct lens through which to view these issues before you. As a country, we pride ourselves as being a country where the rule of law comes over individuals' personal opinions. Okay. Well, then let's get to the heart of it. Okay. Let's do that. Talk about the reckless indifference and tell us what you think constitutes reckless indifference in this case and why the United States Supreme Court hasn't given enough information about reckless indifference to say that that's not enough. Mainly the first question, I think, is what do you rely on for reckless indifference? I think this court totally understands that you look at the total picture. Well, but you wouldn't look at an element that doesn't show it at all, would you? I mean, if you said he doesn't go to church on Sundays, you wouldn't consider that. No. So you'd have to look at each of the factors to see if they indicate anything like reckless indifference. But you look at it as the court indicated, as a totality. Yes. Once we get through, which ones would you eliminate? You said you would eliminate he doesn't go to church on Sunday. Right. I would rely on exactly the ones that the Arizona Supreme Court relied upon in their decision on the Edmund Tyson finding. And they pointed out he knew. Well. I'm sorry. Take them up individually and say whether you think they contribute to it. That he planned the robbery. Okay. That he knew that, at the very least, he knew that Amaral was armed. When you're involved in an armed robbery, you know the person's armed. And isn't that just what the Supreme Court said wasn't enough in Tyson when it gave you the figures of 0.43% of armed robberies result in death, so that that's enough, even if it's foreseeable? They said that's not enough?  I do recall that the court in Tyson talked about how there's an overlap between major participation. Yes. And they talked about how certain crimes are inherently carry a risk of danger, such as armed robbery. And they said that those crimes that carry a risk, like armed robbery, are not enough for you to eliminate the difference between felony murder and reckless indifference for the death penalty. Right. That there has to be more. What is that more in this case? I think that a fair reading of the record was that as to the armed robbery, that but for the actions of Dickens, they never would have occurred. That's true. Assume that, that there would have been no armed robbery but for the actions of Dickens, which could make him a major participant, as you've been suggesting. Definitely make a major participant. Let's assume it made him a major participant. Let's get down to the reckless indifference. The fact that you're a major participant in the armed robbery, and that implies certainly that you know the person's armed if you're going to participate in an armed robbery. Okay. So what beyond that shows reckless indifference? He sent an armed individual that he knew had violent tendencies. Okay. So you're getting to violent tendencies. Okay. Right. What record is there that he engaged in violence that would suggest he might murder somebody? I think the fact that you know that he was violent as Dickens testified. I see in the record one act of assault on a nurse or somebody in the home. At Oak Grove. Oak Grove, a home for violent juveniles. The only act I see was an assault, is it, on a nurse? I believe that's correct, Your Honor. I'm not positive. I believe that's correct. He did batter more than just assault. I heard that it was beaten up. I don't know exactly what you're saying assault is, but I'm just making sure we're not just being threatened. Right. But again, we're getting down into the level where we're like the trial judge, sort of weighing these different facts, and that's not where we should be. We should be up here as the federal court of appeals determining whether there is any way that the state court reasoning on this is reasonable. I mean, Dickens testified that he knew that Amaral was violent, that he had explosive temper. He was armed with a weapon. Well, he said he knew that he had a temper and that he was violent, but it would never have occurred to him that he would kill anybody. I mean, you know, to say somebody's got a temper, I could tell you a judge on this court that is no longer here that had an explosive temper. I don't think he ever would have killed anybody. Now, violent, you know, if you think somebody's violent, you know, whatever that means that somebody is violent, whether that means he's likely to kill somebody, but that's a factor. Yes, they found he was violent, that he knew he was violent. Okay, so that's the first thing, he knew he was violent. That he, the jury agreed that he conspired with Amaral to commit this armed robbery. Well, I was past that point. Okay. That he's a major participant. Okay. I'm agreeing with, I'm just saying with, just on the question of whether it was a reckless indifference to life. And it can't be that he conspired in an armed robbery, because that I think has been made clear by Tyson. I'm not sure how that made it clear by Tyson. The Tyson boys I don't think were the movers and shakers in the kidnapping and the robbery and the murder of the family. So are you suggesting that Tyson does not suggest that armed robbery, being involved in an armed robbery, does carry a grave risk of death? Are you saying Tyson doesn't say that? I'm saying that Tyson recognizes that as one of the types of crime that is inherently carries a risk of death. But they did say that's not enough, didn't they? They did. But here you have Dickens being much more of the instigator of the course of conduct that resulted in these two innocent people being executed. As I understand it, you're making a distinction between, for instance, someone who, if there's a bank robbery, for instance, and a person drives the car, they know somebody's going to go in, they know they're going to rob the bank, but they just sit in the car. They didn't give them the gun. They didn't encourage them to do anything. They just were going to drive the car. So that would be participation in an armed robbery. That's not enough for the death penalty. Correct. But if you have something more. You have something more. And it depends on the facts and circumstances of each individual case. And here you have the trial court finding who was in the best position to look at the equities and to judge the witnesses. And he believed that Dickens' actions showed a reckless indifference to human life. You had the Arizona Supreme Court review the record and come to the same conclusion. You had the district court review the record. So you shouldn't be here at all, then, because the decision's been made by the trial court, the Arizona Supreme Court, and the district court. And nobody is certified. So what are we doing here? At this point, until this court certifies this question, you have no jurisdiction, and I shouldn't be here. As to this question. But we are here. But we are here. And to tell us that those other courts said that they think it's enough doesn't answer the question if we have any role at all. Which is why I asked you whether we have a role. You definitely have a role. You have an important role. But it is a very narrow role where you respect decisions by other courts. I know. I keep trying to get you to tell me what things are to justify a finding, and you keep telling me either we have a narrow role or what wonderful courts those other courts are. I, just for no reason other than curiosity, like to know what it is that would justify finding that somebody who plans an armed robbery knows there's going to be an armed robbery. Which is not enough, because since Tyson says .43% of armed robberies result in death, and even if it's foreseeable that it might, that's not enough. I want to know what it is that justifies reckless indifference. And you keep telling me, well, the jury thought it was reckless. And the Supreme Court did. And the trial judge. But what supports that? Why is that a reasonable determination of the facts? That's our responsibility to convince us that that was a reasonable determination of the facts in this case. And telling us they found it doesn't tell us that. No. It is the petitioner's obligation, the burden, to show that it's an unreasonable application of the facts. Well, if we're convinced that they've done that, then do you lose? If you can't counter what she's told us about there being no factors to support the determination that there was reckless indifference, if you can't articulate a reason as to why there was a basis for that finding, then you lose. If they have convinced you, applying the EPA standard, and I can't convince you otherwise I lose. So you have no response. You have no response to opposing counsel's argument that the factors that were relied upon by the state court did not establish reckless indifference. You don't have an answer to that?  Why? You can't just do an ipsy-dipsy. You have to tell us why. Well, I thought the Arizona Supreme Court laid it out. I thought that the... Okay. What was it that the Arizona Supreme Court laid out that you rely upon to say that there was a reasonable determination of the facts? I think the total actions of Dickens from the beginning of the planning, knowing what he was dealing with in terms of Amaral... Okay, violence of Amaral. Right. Okay, what else? That's a significant factor. What else? That makes it different. His instituting it is a significant factor. Instituting what? The armed robbery. Okay, but that doesn't get you to reckless indifference. Indifference just instituting an armed robbery. No. Being a major participant is just a significant support for where you're going. Yes. And I guess what Judge Rawlinson is trying to get you to do, which is what I understand Judge Reinhardt is trying to get you to do, is tell us why the Arizona Supreme Court's finding of reckless indifference based on considerable experience with the judicial system, aware that he was violent and explosive, which you've talked a lot about, and fail to render the aid knowing one victim may not be found dead is enough. It's enough to be reasonable. That's what they're asking you. Right, and I think... Let me take the last one first. If you're... Judge Smith's last point that he's saying you're trying to make, if... Oh, I thought it was my turn to kind of cope. Kind of argue. Since that's what had happened before. Well, he did. He did tell you, here's what you better... I felt like there was a lot of coaching in other instances. Maybe I'd try. I think it's the job of a good judge to help a lawyer understand the issue. That's right. And Judge Smith did a good job of telling you what you ought to explain. Now, as I said to your opposing counsel, I said, well, I'll wait till you get up here, and then I'll ask the question. If there's a bank robbery, the driver's there, and he knows they're going to go in, and he hears the shooting up the bank. Is he guilty of reckless indifference because he doesn't go in and make sure that none of the people who've been shot are still alive and need help? My personal opinion, probably not. No. So why does he have an obligation? I mean, you know, if you... Let's assume nobody said that he... No court said that he told them... The state says he didn't tell them to go in and commit murders. He told them to commit robberies. And he might have known that whenever you have an armed robbery, there is a remote possibility, 0.43%, according to the Supreme Court, that somebody's going to get killed. But that is just foreseeability. So when you participate in that and have no reason more than 0.43% to think it's going to lead to a shooting, what is your obligation after the person who does the shooting needs to get away from there? What's your obligation to go look for victims and see if you can help them? I think there is, given the fact that he... There's no question that he knew that the victims had been shot. He saw the muscle flash. At one time, he said he heard one shot. Another time, he heard two shots. I mean, his credibility is not very good if you read his testimony. But all that said and done, he picked up Amaral. He claims Amaral told him he shot both people. And then he went ahead and left. Now, to me, that shows an indifference to human life. Did the court impose an obligation on him to do anything? I don't think we have to have a legal obligation to do anything. The court made an observation that he didn't render aid. It didn't say he had an obligation to do it, but just looked at the fact that he didn't render aid as one of the factors. Right. That was one of the factors. And what we're talking about is reckless disregard. Isn't that also one of the factors? And here I'm coaching again. Isn't it true that in Tyson, one of the factors they looked at is the amount of effort made to assist the victims before, during, and after? Isn't that one of the factors Tyson looked at? I would rely on your knowledge. On the coaching. Yeah, on the coaching. You're going with the coach. Yeah. But it's certainly reasonable as human beings. I mean, what we're talking about is recklessness. And if you know somebody has been shot, and you're told that somebody has been shot, and there's the possibility that they're still alive, isn't it reckless as a human being, regardless of any legal obligation, not to go back and at least check and see if someone is alive? If your intentions are not to have them die. Right. Right. I'm coaching a little too. Back to my original question. Every driver in a bank robbery who hears the shots in the bank, he's reckless if he doesn't go see if any of them are still alive lying on the ground. And he planned the bank robbery. No, no. We're just talking about reckless indifference to human life. We're not talking about... But it's the whole package. It's true. Those are two separate elements, but they overlap, and it's the whole package we're looking at. I understand why you would just say, well, look at everything. But I have a curiosity, if nothing else, to look at each one and see what it does, to what extent it contributes. And your answer was that if you send somebody else into the bank and you know it's going to be an armed robbery, and you hear them shoot, which you didn't expect, or you did, you hear them shoot, and then he comes running out, you should go back in the bank and see if anyone needs help. And if you don't, that's reckless indifference. If we're talking about... Under Tyson. Oh, we're talking about under Tyson? Under Tyson, I wouldn't say that was reckless indifference, that narrow set of circumstance, my personal opinion. So next we have what? Ted Smith has a list of factors for you to answer. No, I was going to say, the biggest problem that I have in this case for you, frankly, is that in Tyson, they laid out some factors in the Supreme Court that we should look at, which would lead us to determine that one has not only been a major participator, but a reckless indifference. And yet, after talking about these factors, and knowing what was in the record, they sent this case back. On the reckless indifference. So, should we do that? No. Why? Because you have findings by the state court that he was recklessly indifference. Were there no findings in Tyson? I do not believe there were. That Edmund was still the law at that time, and I don't believe they made findings. And once they sent the case back, the mere fact that they ended up with a life sentence doesn't tell us anything about the legal merit of that, whether that was a matter of grace, or what transpired after it was sent back. They did, in fact, end up with a life sentence. There was no finding of reckless indifference when they sent it back. Maybe not, that's what I've been assuming. Well, there was no finding, but they certainly laid out the factors for such a finding. No, no, I mean after it was sent back. Right, right. But they provided the court with some guidance as to things they could consider, such as their major participation. All right. Do you have anything further? I have nothing further unless you have some questions for me. Did you want to discuss the other issues, the bailiff issue? Not unless it's bothering the court. Okay. Thank you very much. Well, we'll give you a couple of minutes if you wanted to. Just a couple of quick points. There's no evidence in the record to suggest that Amaral had any propensity to commit murder. There's no evidence that Mr. Dickens knew that a victim could have been alive. Well, wasn't there evidence that when the first responders were there that the husband was alive at that point? Yes. And isn't it a fair inference that if the husband was alive when the first responders arrived at the scene, that the defender was aware they were alive when he drove through? Isn't that a fair inference? I don't think that is a fair inference to say when you're talking about reckless indifference to human life to say Mr. Dickens knew that there was somebody alive. I didn't say knew. A fair inference that he was aware that they were alive. If the husband was alive when the first responders arrived, couldn't the court fairly infer that Mr. Dickens was aware that they were alive when he drove through? Why isn't that a fair inference in the evidence? There's no record evidence to show that Mr. Dickens knew and in the middle state was aware that there was anybody still alive. Judge Rawlinson isn't saying that there's anything more than we all agree on within the record. They've been shot. He was alive. Judge Rawlinson's question, is it a fair inference that he was aware from those facts that he would have become aware since he wasn't dead that he would have become aware that he was alive? I think you can come up with an answer if you'd like, but otherwise we can argue about it later. There's nothing that I can point to in the record to show that Mr. Dickens had any reason to know or believe. But was the trial court, the state court, precluded from making that inference? That's the difficulty I have with your argument. You disagree with the finding, but was the state court precluded as a matter of law from making that as a fair inference? I would say based on the record, yes. However, if you disagree, I'm going to move on. The findings here do not support reckless indifference, and the death sentence here cannot stand. And Judge Smith, as you said, what would we do in this case, send it back? No, the facts do not support the death sentence here. So even you are suggesting, I don't have any alternative to send it back. I've just got to see whether the Arizona Supreme Court did a reasonable application of Supreme Court precedent in front of it at this time to determine. Even you agree with that. I would agree, as well as an unreasonable determination of the facts. I don't think this court can overlook the factual findings. But it has to be objectively unreasonable. It can't be that we just disagree with it. And that's where I see your argument, is you're disagreeing with the factual finding. But we have to find, we have to conclude that it's objectively unreasonable as a matter of law. I think your problem is not saying, you know, I think this, but saying it's objectively unreasonable for a court to infer from the fact that someone who turns out to be alive does not appear to someone driving by to be dead, that that's an objectively unreasonable inference. That is an objectively unreasonable inference. Now you've got your chance to be coached. And the last thing I just want to point out in the record, that at ER 1078 to 1080, the three jurors on Mr. Dickens' jury sent letters to the judge telling the judge that they did not believe he deserved the death penalty. Yeah, but that's not something we can consider. There are a lot of things in this case that you might find raise questions in your mind about why the judge imposed the death penalty or whether he did it. But Judge Rollins said we are limited to the record and the legal questions, whatever our doubts may otherwise be. Or not. So do you have anything further? No, Your Honor. Thank you. Thank you both very much. Court will stand in recess for the day.
judges: Reinhardt, Rawlinson, Smith N. R.